# SUPREME COURT.

BENJAMIN F. ALLEN, WILLIAM A. STEPHENS and HERMAN
   BLENNERHASSET agt. THE SCANDINAVIAN NATIONAL BANK.

In an action on a bill of exchange against an insolvent national bank of
   another state, which has funds deposited in a bank in this state, and in
   which action an attachment is issued on behalf of the plaintiffs and said
   funds are attached, this court has *jurisdiction* of the action and of the
   attachment proceedings under it.

The *receiver* of such foreign national bank not being a party to the action,
   has no *status* which authorizes him to move to set aside the attachment
   proceedings.

Where the *receiver* of such foreign national bank files a bill in equity in the
   United States circuit court against the plaintiffs in the attachment suit
   and the sheriff who served the attachment, and moves the court upon
   the bill and upon affidavits for an *injunction* to stay all proceedings in
   the attachment suit and for a *receiver* to take charge of the funds pend-
   ing the litigation, on the ground that the United States court has exclu-
   sive jurisdiction of said insolvent national bank and is entitled through
   its receiver to the custody and control of the funds so attached, the
   motion both for the injunction and receiver will be denied.      . .

*New York General Term, May*, 1873.
*Before* INGRAHAM, *P. J., and* BRADY, *J.*

THIS is an appeal by the above named defendant to the
general term of this court from an order of special term
entered on the 5th day of March, 1873, denying a motion to
vacate and set aside an attachment and order of publication.

The action was commenced by summons and complaint
upon a bill of exchange made by the defendant, a corpora-
tion located and doing business at the city of Chicago, in the
state of Illinois, to the plaintiffs, residents of the city of
New York, dated December 9th, 1872, at Chicago, who
directed the same to the National Broadway Bank of the city

of New York, the defendant's corresponding bank, requiring the National Broadway Bank to pay to the order of the plaintiffs the sum of $650 at sight for value received. The complaint charged that this sum was due and owing the plaintiffs from the defendant, and demanded judgment against the defendant for said sum, with interest from December 9th, 1872. Upon this complaint and affidavits of the plaintiffs, showing that the defendant was a foreign corporation organized under the provisions of the act of congress of the United States, passed June 3d, 1864, and the amendments thereof, doing business at Chicago, Illinois; and that the defendant had property within the state of New York consisting of a sum of money, an attachment was issued on the 12th December, 1872, against the defendant; upon which attachment the sheriff of the city and county of New York attached the funds deposited by the defendant in the Broadway National Bank on the 13th December, 1872. On the 19th December, 1872, an order for the publication of the summons was obtained and its publication immediately thereafter commenced.

The defendant, by the United States district attorney for the southern district of New York, acting for the receiver, before the time to answer expired, upon an affidavit stating that prior to the commencement of this action, on or about December 11th, 1872, the defendant suspended and became insolvent according to the act of congress of June 3d, 1864, and acts amendatory thereof, and on the 18th December, 1872, Jacob D. Harvey was appointed receiver by the comptroller of the currency, applied, as such receiver, to a justice of this court for and obtained an order for the plaintiffs to show cause, at a special term to be held on the third Monday of February, 1873, why the warrant of attachment and proceedings under it should not be set aside, on the ground, among others, that this court has no jurisdiction, and that the continuance of said proceedings in this action, and of said attachment is in violation of said acts of congress; and

that the attachment was issued after the commission of the act of insolvency by the defendant, and with a view to prevent the application of its assets as prescribed in said acts of congress, and to prefer the plaintiffs in this action by securing to them their claim in full from said assets in preference to other creditors, or the ratable proportion of said assets that might be found due to the plaintiffs under said acts.

On the 5th of March, 1873, the order to show cause was argued before judge FANCHER, who made his decision as follows : " So far as the defendant is concerned, the attachment was properly granted (50 *Barb.*, 339), and the case of *Tracy* agt. *First National Bank of Selma* (37 *N. Y. R.*, 525) decides that the receiver has no *status* in the action to make a motion to vacate the attachment. The receiver must assert his title in some other manner. Motion denied. From this decision the defendant appealed to the general term.

GEORGE BLISS & H. EDWIN TREMAIN, *attorneys and counsel for defendant and appellant.*

The summons in this action is dated December 12th, 1872, and an attachment was issued December 12th, 1872, against defendant, as a foreign corporation having funds with Broadway National Bank, in New York city.

The moving papers show that the Scandinavian National Bank of Chicago, Illinois, where it carried on business, suspended payment, and that its circulating notes were protested before this action was commenced. The receiver was appointed by the comptroller of the currency, under the banking act of 1864 (13 *U. S. Stat. at Large*, 115), December 12th, 1872.

Plaintiffs attempt by this action to wrest the funds in the Broadway Bank from the receiver's control, to be applied to their alleged debt. Defendant resists; and appears by attorney solely for the purposes of the motion, which resulted

in the order now appealed from. That order denies defendant's motion to vacate and set aside the summons, warrant of attachment, order of publication, and all proceedings in this action, and to stay it until further order.

This appeal involves, among other things, three questions :

(1.) The jurisdiction of this court.

(2.) The right of a state court to seize moneys belonging to an insolvent national bank, or its receiver ; and

(3.) The right of defendant to make the motion denied at special term.

I. Under sections 8 and 57 of the banking act of 1864 (13 *Stat. at Large*, 99), a national bank can only be sued in a municipal court that acquires jurisdiction within the county or city where the bank is situated (*Richardson on Public Debt and Banking Laws, pp.* 105, 134, 138 ; 13 *U. S. Stat. at Large*, 116, 101).

The decision of INGRAHAM, J., to the contrary was at special term (chambers) of this court, not binding here, and made when the act was (1867) without much judicial construction. The report does not show what argument was made before him (*Cooke* agt. *State National Bank of Boston*, 50 *Barb.*, 339).

Two years later (1869), the supreme court in Massachusetts, *in banc*, unanimously construed the act of congress to limit the courts having jurisdiction of such corporations to those stated in the act itself (*Crocker* agt. *Marine National Bank*, 101 *Mass.*, 240).

In 1873, an elaborate opinion was given by BLATCHFORD, J., to same effect (*Cadle, Rec'r*, agt. *Tracy, etc., U. S. Circuit Court* [*not reported*] ).

The expression in other sections (46 *and* 50, *U. S. Stat. at Large*, 115), of a court of "competent jurisdiction," is an instance of the evident design of the act to keep matters, arising under it, within the jurisdictions described in the act itself.

The rights and immunities of a corporation, created out of

this state, are to be determined by the law creating them (*Hope Mutual Insurance Co.* agt. *Perkins,* 38 *N. Y.,* 407).

The power of congress to make this limitation as to the proper court in which to sue will not be disputed ; and were it otherwise, a state court, even at general term, would hesitate to declare to the contrary, unless the act is manifestly unconstitutional, which no one has ever seriously pretended.

II. The Scandinavian Bank has no property in New York state. The funds in the Broadway Bank vest in the receiver, as well from his appointment, as from date of insolvency or suspension (§ 52, 13 *Stat. at Large,* 115).

III. The attempt to bring into this court, by attachment, the funds lately of the Scandinavian Bank, to be held until a determination of the claim of plaintiffs, described in the complaint, and in the end possibly to be appropriated towards the payment of that claim, is in direct violation of law (§ 52).

One cannot be permitted to gain by adverse proceedings, under the guise of law, what the law-making power has declared he shall not gain. " Will the law compel a payment which the law prohibits ? " (*Venango National Bank* agt. *Taylor,* 56 *Penna. R.,* 14).

The transfer of any funds belonging to the insolvent bank, to its creditors, or any other person, is expressly *prohibited.* If these funds can be reached by attachment this law is nullified.

IV. Whether the receiver ought not to be substituted as a defendant, is not necessary to the determination of this motion. Plaintiffs must apply to the court for such a change, if it can be made, and if their summons is not set aside. The objection will then be urged again that the court is without power or jurisdiction, and that another method has been by law provided for the determination and payment of plaintiffs' claim.

Even a payment, by the receiver of a judgment upon an execution in this action, would be without warrant of and against the law, unless all other creditors were also paid in

full.   The law does not permit to be done indirectly what cannot be done directly.

V. The moneys in the National Broadway Bank are, and were, when the summons was issued, as if in the custody of a public officer of the United States, by virtue of his office, and were, therefore, subject only to the authority controlling such public officer.   That authority is defined in the act under which the office is created and the officer appointed.   That act is law for this court.

(*a.*) The receiver is a public officer, an officer of the United States, for the purposes named in the act (*Platt, Receiver,* agt. *Beach,* 2 *Benedict,* 303).

(*b.*) The property in the hands of a public officer of the United States, coming to his hands in the exercise of his office, and concerning which the United States has an interest or lien or the legal custody until its claims are satisfied, cannot be reached by attachment (*Conrad* agt. *Pacific Ins. Co.,* 6 *Peters,* 262 ; *Harris* agt. *Dennie,* 3 *Pet.,* 292).

Property in the hands of one national bank and belonging to another national bank cannot be diverted from its legal channel because not in the manual custody of the home bank. No greater rights can accrue to plaintiffs upon moneys in the hands of the agents of the insolvent bank than would attach to moneys in custody of the insolvent bank itself ; especially where the same laws govern all parties in respect to such moneys.

The property is in fact, and to all intents and purposes, *in custodia legis.*   It is not, therefore, a proper subject of attachment.

VI. Even if this law regulating these moneys was a mere statute of another state, the " rights and immunities " under it, " so far as they are consistent with our domestic policy and unabridged by our own legislation, are entitled to recognition and protection in the courts of this state " (*Merrick* agt. *Van Santwood,* 34 *N. Y.,* 208).

The act of congress, however, being of a law-making

power competent to make law on this subject applicable to New York state, positive enactment is substituted for this well established comity.

VII. Upon the theory that the corporation ceased to exist upon its insolvency, it may be said with propriety that the mere suggestion that there is no such person, individual or corporate, as that named as defendant, is sufficient for the court to vacate its writs issued against such a person or his property. The case is then parallel to the suit against a deceased non-resident. His estate is not liable to attachment, but to the administration thereof provided by law in such cases.

The effects of a deceased person are not liable to attachment (*Redfern* agt. *Rumney*, 1 *Cranch C. C.*, 300; *id.*, 352; 5 *Cranch C. C.*, 469).

VIII. As there can be then no attachment in this case (of funds available to plaintiffs or otherwise), so again is this court without jurisdiction and compelled to set aside all proceedings subsequent to the summons and complaint (*as was done in* 5 *How. Pr.*, 183). They are not only voidable but absolutely null and void (*Singgart* agt. *Harber*, 4 *Scammon*, 37).

Where the exercise of a jurisdiction is in violation of law, and cannot be justified by the submission or consent of the parties, the proceedings are *wholly void* (*Griffin* agt. *Daninguey*, 2 *Duer*, 658; *Case* agt. *Terrell*, 11 *Wallace*, 200).

The result of any proceeding, in an action brought against a foreign corporation without its voluntary appearance (or even after service upon their managing agent under the Code), and where no attachment has been issued and served, is that the courts of New York do not get jurisdiction of the defendant *so as to render a personal judgment*. The extent of their power is to subject the property and effects of such corporation within this state to the payment of its debts, by a judgment *in rem* after such property and effects have been attached under the Code (*Brewster* agt. *Mich. Cent. R. R. Co.*, 5 *How. Pr.*, 183; *Cooper* agt. *Reynolds*, 10 *Wall.*, 308).

So here this jurisdiction can only be made complete by the enforcement by this court of its attachment against property that, by the "supreme law of the land," cannot be taken into custody for any creditor or other person except the receiver appointed by law. "Jurisdiction has reference to the power of the court over the parties, over the subject-matter, over the *res*, or property in contest, and to the authority of the court to render the judgment or decree which it assumes to make" (*Cooper* agt. *Reynolds*, 10 *Wall.*, 316).

IX. The subject is brought properly before this court by a motion in defendant's behalf.

The motion is made by defendant.

1. In *Tracy* agt. *First National Bank of Selma* (37 *N. Y. Rep.*), the court of appeals hold that the receiver has no right to make motion to vacate attachment unless he is made a party; and they do not decide whether he may or may not be made a party; nor do they decide that the motion may not be made by the bank itself.

That our course is proper is now established by the case of *Bank of Bethel* agt. *Pahquioque Bank* (14 *Wallace*, 383), where United States supreme court hold that an insolvent national bank may appear in court by its name, for the purpose of judicially determining a creditor's claim.

The New York supreme court, in 30. *Barb.*, 160, expressly recognize the principle that a foreign corporation may appear for the purposes of motion only in order to raise jurisdictional questions.

All the questions in this case are of a jurisdictional character.

The jurisdiction of the court and the manner in which it is attempted to be exercised are both called in question.

2. But the receiver is an officer of the United States (*See Platt, Rec'r*, agt. *Beach*, 2 *Benedict*, 303).

He cannot submit himself as a party defendant to be directed as such an officer to the jurisdiction of this court (*Case* agt. *Terrell*, 11 *Wallace*, 200).

The claims of the United States are opposed to those of attaching creditors, and they cannot be disposed of by any judgment of this court—even by the voluntary submission to its jurisdiction by the said receiver or any other United States officer   This doctrine is clearly set forth in *Case* agt. *Terrell* (11 *Wallace*, 200).

3. The court must act according to the law as it stands upon the undisputed facts before it—and as though these facts came to its judicial knowledge by way of suggestion, or as from *amicus curiæ*.

This court should vacate the attachment and order of publication, and set aside the summons and all subsequent proceedings.

X. The order appealed from should be reversed with costs, and the proper order made in the premises.

MORRIS & BILLINGS, attorneys.

COLES, MORRIS & MICHAEL H. CARDOZO, *of counsel for plaintiffs and respondents.*

I. There is a preliminary objection to the hearing of this appeal which is fatal.

A motion to dissolve an attachment, like any other motion in a suit, can only be made by a party to the same.

Under sections 121 and 122 of the Code it was competent for the receiver to apply to make himself a party to this action.   This he has failed to do.

He is therefore a stranger to the proceedings.

He had no *status* to make the motion at special term; he has none to conduct the appeal to this court.

The case of *Tracy* agt. *First National Bank of Selma* (37 *N. Y. R.*, *p.* 523) is directly in point and conclusive.

But, if it be necessary to enter into the argument of this appeal on its merits, we respectfully insist as follows:

II. The supreme court has jurisdiction of this action (*Cooke* agt. *State National Bank of Boston*, 50 *Barb.*, *p.* 339).

III. This action was not brought upon any "*transfer of deposit to the credit of this bank,*" but upon a bill of exchange which is payable *absolutely and at all events.*

It is abundantly settled that a draft, not *specifically* drawn on a fund, does not operate as an· *assignment* of any part of it, nor constitute an equitable lien thereon (*Harris* agt. *Clark,* 3 *N. Y. R., p.* 93; *Copperthwaithe* agt. *Sheffield, id., p.* 243; *Winter* agt. *Drury,* 5 *id., p.* 525; *Chapman* agt. *White,* 6 *id. p.* 402).

IV. There are no express words in the act with reference to which this motion is made, to make the attachment in this action *void,* and the court will not *unnecessarily* give such a construction to it (*Sedgwick on Statutory and Constitutional Law, pp.* 308 *and* 310).

V. In the bankrupt act of 1867, it is *expressly* provided that all attachments obtained within four months next preceding the commencement of the proceedings, &c., shall be dissolved. The inference is that no *such construction* could be given to the act in the *absence of such express provisions.* Indeed, it has been expressly held that, under the bankrupt act of 1841, which did not contain such a provision, all *liens* which were valid by the laws of the states respectively were preserved (*Wooten* agt. *Clark,* 23 *Miss.,* 1 *Cush.,* 75).

VI. The mere act of insolvency did not have the effect of *divesting* the bank of its property.

Under section 47 of the act, the act complained of is to be *ascertained* by an agent to be appointed by the comptroller, with the concurrence of the secretary of the treasury.

Under section 50, upon becoming *satisfied* that an ˙act of insolvency has been committed by the bank, the comptroller then appoints a receiver, *who is to give security ;* and the receiver so appointed is to take *possession* of the property of the bank.

And *even after the appointment* of the receiver the bank may, upon denying that it is insolvent, have further proceedings in the matter restrained, and the court may make an

order enjoining the comptroller, and any *receiver* acting under his direction, from all further proceedings on account of the alleged act of insolvency (*Id.*).

All these proceedings may precede the actual *dissolution* of the bank; and if the investigation under them proves favorable to it the dissolution does not take place.

*Again*, it is provided by section 46, that even "after default by the bank, on examination of the facts by the comptroller, and notice by him to the bank." the bank may still *receive* and safely keep *money belonging* to it.

VII. The insolvent bank does not become *divested* of its property until the appointment of a receiver *competent* to take possession of it.

VIII. The receiver appointed in this matter, on 12th December, 1872, was *not* competent to take possession of the property of the bank, because he failed to give the requisite security.

IX. There was *no competent* receiver *appointed* until 18th December, 1872; and the attachment in this action was served on the Broadway Bank on 13th December, 1872 (*see affidavit of H. Blennerhasset and letter of comptroller thereto annexed*).

X. The rule which was laid down by justice STORY in *ex parte Foster* (5 *Law R., p.* 55), that when the decree in bankruptcy is passed, it relates back, for all the purposes of the act, to the time of the petition, has never been universally adopted (*see Miller agt. Black,* 1 *Barr, Penn. Rep., p.* 420), in which it was held that the levy of a judgment creditor, under execution upon the property of a bankrupt after the filing of his petition and before a decree, was prior and superior to that of the assignee in bankruptcy (*see, also, Berthelon agt. Betts,* 4 *Hill,* 577; *Drake on Attachment,* § 435).

XI. The court in the case of the *Venango Bank* agt. *Taylor* (56 *Penn. S. R., p.* 14), which is relied on by the receiver in this case, expressly concede "that there is nothing in the act in question which declares that the assets of a

bank vest in the receiver immediately from and after an act of insolvency, or that the appointment of the receiver relates back to such act," and adds: "But the difficulty of the defendant does not lie *here*, but in the *prohibition* of any *transfer* of the assets until a receiver has been appointed." The facts in that case were, that Taylor, the defendant, owed the bank $50,000. A certain Rynd had a deposit there of $44,000, which he assigned to Taylor *after the bank had stopped payment*. The decision was that this assignment was *void by the express terms of the act*, and that Taylor could not, *therefore*, offset it against his indebtedness to the bank. It is true that the judge, who delivered the opinion of the court in that case, goes on to say that he had no doubt "that the purpose of congress was to secure all the assets of the bank existing at the time of its act of insolvency for ratable distribution;" but all this is clearly an *obiter dictum*. In fact, the decision in that case can be fully sustained on general principles applicable to bankrupt acts, without reference to the special provisions of this act.

See *Smith* agt. *Brinkerhoff* (8 *Barb. S. C. R.*, *p.* 520), in which it was held that where, after a creditor has filed his petition in bankruptcy, a debtor, with full knowledge of the fact, purchases a debt against him, he cannot set it off in an action brought by the assignee in bankruptcy to recover the original indebtedness.

With all deference to the *extra-judicial* opinion of the learned court in the case of the *Venango Bank* agt. *Taylor*, above referred to, we submit that there is nothing in the act in question which renders it *necessary* for this court to give it a harsher operation than has been sanctioned in the construction of ordinary bankrupt acts; and that if any *uncalled* for construction of this act is to be given it should be rather in favor than against the rights of innocent creditors.

XII. The order should be affirmed, with costs.

The general term affirmed the order of the special term. No written opinion being given; but judge INGRAHAM said,

that on the merits they were satisfied that the attachment was properly granted.

On the 24th of June, 1873, the receiver of the Scandinavian Bank, by George Bliss, his solicitor, filed his bill in equity in the United States circuit court for the southern district of New York in the following entitled cause:

## UNITED STATES CIRCUIT COURT—Southern District of New York, in the Second Circuit.

J. D. Harvey, Receiver of the Scandinavian National Bank of Chicago, *Plaintiff*,

*against*

Benjamin F. Allen, William A. Stephens, Herman Blennerhasset, The National Broadway Bank, and Matthew T. Brennan, Sheriff of the City and County of New York, *Defendants*.

Which bill, in its stating part, set forth substantially the same facts as contained in the papers used by the plaintiff herein on his motion to set aside the attachment proceedings in the action in the supreme court above mentioned; and alleged that the defendant, the Broadway National Bank, at the time of the insolvency of the Scandinavian National Bank, December 11, 1872, had in its possession $1,500, more or less, which the plaintiff, as receiver, and in behalf of the comptroller of the currency, was entitled to demand, and of said sum to receive manual custody, that the same might be paid into the United States treasury; which demand and custody the National Broadway Bank had refused, on the ground that a part of said fund was held by the sheriff of New York by virtue of a warrant of attachment in favor of the defendants; and the plaintiff charged that, by such attachment, and proceedings under it, he was subjected and

annoyed with unjust, unnecessary, oppressive and vexatious litigation, and prevented thereby from the discharge of the duties of his said office as receiver; prayed for an injunction, restraining the National Broadway Bank from paying over said moneys to any person except the complainant, and for a stay of all further proceedings in the attachment suit; and also prayed for a receiver to take possession of said fund pending this action. On the 25th June, 1873, upon the bill of complaint and papers filed and served in said action, the plaintiff's solicitor obtained from judge BLATCHFORD an order, for the defendants to show cause on the 28th June, 1873, why an injunction should not issue, and a receiver be appointed, in accordance with the prayer of the complaint. Upon the motion to show cause why an injunction should not issue, the defendants argued as follows:

MICHAEL H. CARDOZO, *for defendants.*

I. The United States circuit court has no power to stay the proceedings in an action pending in the state court. It cannot accomplish this by its writ of injunction.

The act of congress of March 2d, 1793, prohibits the United States courts from granting a writ of injunction to stay proceedings in any court of a state (*U. S. Stat. at Large*, 355).

(*a.*) This statute has repeatedly received a judicial construction in the supreme court of the United States, as well as in the circuit courts thereof, and it has been uniformly decided that the power here sought to be invoked does not exist (*Diggs* agt. *Wolcott*, 4 *Cr.*, 179; *Peck* agt. *Jenness*, 7 *How.*, 612; *Colby* agt. *Ledder, id.*, 626; *Taylor* agt. *Carryll*, 20 *How.*, 597; *Johnson* agt. *Bishop*, 1 *Woolworth*, 324; *Atkinson* agt. *Purdy, Crabbe*, 656; *City Bank of New York* agt. *Skelton*, 2 *Blatchf.*, 26; *Ex parte Cubrera*, 1 *Wash.*, 232; *see also* 10*th National Bank* agt. *Sanger*, 42 *How. R.*, 179).

(*b.*) The fact that the injunction issues only to the parties before the court and not to the court itself, is immaterial. It is no evasion of the difficulties that are the necessary result of

an attempt to exercise this power over a party who is a litigant · in another and independent forum (*Kennedy* agt. *The Earl of Cassilis, per lord* ELDON, 2 *Swans.*; *Peck* agt. *Jenness,* 7 *How.,* 625).

(*c.*) Both tribunals are in general of concurrent and coextensive power and authority. Neither the one nor the other can, under any guise, directly or indirectly, enjoin the proceedings of the other. Only a higher court of the state or nation can decide either to be wrong (*Johnson* agt. *Bishop,* 1 *Woolworth,* 324; *Peck* agt. *Jenness ,* 7 *How.,* 612).

II. The supreme court of the state of New York has jurisdiction of an action brought therein by one of its citizens against a corporation organized under the banking act of 1864, and carrying on business at Chicago, Illinois (13 *U. S. Stats. at Large, p.* 99).

(*a.*) The power conferred by section 57 of bringing actions against these associations in certain specified courts is permissive, not mandatory.

(*b.*) There are no words of exclusion in the act; and it is a general rule as to jurisdiction, that, to confer it upon one court, does not operate to oust other courts before possessing it.

(*c.*) The provision relative to state courts was only inserted to prevent an inference that might arise that jurisdiction was intended to be restricted to the United States courts.

(*d.*) The construction contended for by the receiver, if adopted, would work great inconvenience, and enable these associations to delay and defraud creditors.

(*e.*) Congress had no power to deprive the state courts of jurisdiction in all suits against these banking associations (*Pitt Cooke* agt. *State National Bank of Boston,* 50 *Barb. S. C. R. P.,* 339; *S. C., in court of appeals, MS. opinion of* CHURCH, *Ch. J.*).

III. The preliminary injunction should be dissolved.

Upon the motion for the appointment of a receiver, the complainant argued as follows:

H. EDWIN TREMAIN, *for complainant.*

This is a motion for the appointment of a receiver to take charge of the fund in controversy in this action, until its final determination.

The motion is made by the complainant on notice to the Broadway Bank, the sheriff and Allen, an alleged attaching creditor, all defendants, resisting it.

The fund in question is now in possession of the Broadway Bank, from whom it is claimed by Allen, and in his behalf by the sheriff, and by the complainant as receiver of the Scandinavian Bank, of Chicago, to whom unquestionably the deposit did belong.

The Broadway Bank claims to be a mere stakeholder. If so, it can make no meritorious objection to the granting of the motion, unless its rights would thereby be prejudiced.

The Broadway Bank being a codefendant in this suit, brought to determine conflicting claims to the same fund, all the claimants to which are before the court, can in no wise be prejudiced by the care and distribution of the fund in this suit.

A final decree in this suit will protect the bank and inure to its benefit, and an interlocutory custody by the court of the property in controversy will have the same effect.

Without this, there being no injunction against the defendants pursuing their claims in other courts, the Broadway Bank is liable to the embarrassment of other litigation for the same fund.

It would be the interest of the sheriff so to pursue the bank in case the defendant, Allen, should seek to hold the sheriff. All such controversies would be *quieted* by the care of the fund in question by this court until a final decree.

Unless a receiver be appointed, the fund is exposed to the attacks of the defendant, Allen, in his attempt to remove it beyond the jurisdiction of the court. The moving papers show such an attempt under color of authority.

Allen agt. The Scandinavian National Bank.

The question, then, arises: Does the exercise of the pretended authority, under color of an unwarrantable claim of jurisdiction, endanger the fund or any part of it; or the rights of the complainant to it, in case such rights exist, as alleged in the bill of complaint?

Most unquestionably, yes.

Aside from the diminution the fund would thus suffer, new claims could be made upon it that might prevent the decree of this court in this action from being of the same practical value to the complainant, if he succeeds, that it would have if the fund remained in *statu quo*.

But it is urged that the fund is already in the custody of the state court.

This is a misapprehension. It is merely *claimed* by sheriff by virtue of an attachment issued by a court which this court has held is without jurisdiction in the premises.

The sheriff has served an attachment on the Broadway Bank. The deposit is confessedly the property of the Scandinavian Bank. These facts do not place the fund in the custody of the state court or its officers. Even if they did, the attachment being without jurisdiction, and not yet followed by a final judgment under a claim of jurisdiction, there can be no such conflict between the state and the United States court as is attempted to be foreshadowed in opposing this motion.

As to the question of jurisdiction of the state court, that has been already discussed on a prior motion in this case.

The complainant claims the supreme court has no jurisdiction.

The power of this court to appoint a receiver is not doubted. To exercise it in this case is to preserve existing equities, to prevent multifarious litigation, and to secure the fund intact for any decree that may be rendered herein.

All the claimants to it can be protected in no other way until this suit is determined.

Under no consideration can it be properly assumed that the fund in question had been placed within the control, or at

the order, or in the keeping of the state court, prior to this suit.

To a part of the fund no claim adverse to complainant's is set up, and as to $600 thereof it is not in the custody of the sheriff, who should have it if the attachment confessedly operated on the bank as a divesture of title.

The mere certificate by the cashier, even though statutory, is not an absolute transfer of the fund into the supreme court.

But the certificate, in fact, is made subject to the rights of the comptroller of the currency, and, therefore, of the receiver (*See certif., p.* 10, § 39, *of the case of Allen* agt. *Scandinavian Bank, with papers, printed*).

The Broadway Bank expressly certifies that the funds of the Scandinavian Bank have been taken in charge of the comptroller, but, nevertheless, the Broadway Bank will retain $600 thereof, because of said attachment, until it is "*legally divested of the same.*"

The claim of the state court through the alleged attachment has not yet generated into an absolute control of the fund in question.

The pretense that this motion is to transfer moneys from the state court to the custody of this court, finds no warrant in the papers before the court on this motion, or the facts of the case.

The complainant is entitled to a receiver until the final decree in this suit.


MICHAEL H. CARDOZO, *for defendants.*


I. This suit was instituted without necessity, and is an attempt at an original and bold experiment, sanctioned by no precedent and sustained by no authority.

(*a.*) The plaintiff herein might have made himself a party to the action pending in the supreme court of this state, between this defendant Allen and others, and the bank, of which the plaintiff has been appointed the receiver (*Code*, §§

121 *and* 122; *Tracy* agt. *First National Bank of Selma*, 37 *N. Y. R.*, *p.* 523, *per* WARD HUNT, *Ch. J.*). There is no question raised by the bill in this suit which cannot be determined in that action; and if the state court should fail to recognize the legal rights of the receiver, a presumption not here to be indulged, he could, in the proper mode, bring the case from the highest court of the state to the highest court of the United States; the fund in dispute *remaining in the meantime* in the Broadway Bank, in whose hands it has been attached (*Johnson* agt. *Bishop*, 1 *Woolworth U. S. Cir. Ct. R.*, *p.*, 324; *per Mr. justice* MILLER).

(*b.*) The books are full of cases in which property, *actually in the possession* of United States officers, has been replevied under authority of the state courts; and in *no* such case has the aid of a United States court ever been granted to resist or impede in any way the action of the state court, although in many such cases, as afterwards determined therein by the supreme court of the United States, the state court has acted wholly *without jurisdiction* (*Freeman* agt. *Howe et al.*, 24 *How. U. S. R.*, *p.* 450; *Buck* agt. *Colbath*, 3 *Wallace U. S. R.*, *p.* 334; *Taylor et al.* agt. *Carryl*, 20 *How. U. S. R.*, *p.* 583). It has ever been the proper aim and desire of all admirers of our peculiar judiciary system, and of all in any way connected therewith, to avoid anything like an unseemly conflict or clashing of authority. Even where the power to interfere is undoubted, not only comity but public policy forbids its exercise (*Atkinson* agt. *Purdy*, *Crabbe U. S. R.*, *p.* 556; *Mead* agt. *Merritt*, 2 *Paige's Ch. R.*, *p.* 402; WALWORTH, *Ch.*).

II. If the foregoing considerations, supported by the authorities cited, do not afford an absolute *defense* to this suit, they, at least, show good cause why the plaintiff's motion for a receiver should not be granted.

(*a.*) The aid of the state court was first invoked in this controversy, and the subject-matter thereof was, before the commencement of this suit, in the actual custody and control

Allen agt. The Scandinavian National Bank.

of the state court, and of its officer, the sheriff, under the writ of attachment issued by it, and served on the Broadway Bank (*Freeman* agt. *Howe, ut supra; Taylor* agt. *Carryl, ut supra; Buck* agt. *Colbath,* 3 *Wallace U. S. R., p.* 341; *Hogan* agt. *Lucas,* 10 *Peters U. S. R., p.* 400).

(*b.*) It makes no difference that, in the opinion of this court, the state court had no jurisdiction of the action in which the attachment was issued. The court of appeals of this state has unanimously sustained such jurisdiction; and the Broadway Bank cannot, therefore, pay over this money to any receiver appointed by this court without rendering itself liable to the sheriff, who would be liable to us if the judgment of the state court should be in our favor. It is not at all likely, under these circumstances, that the bank will give up the control of this fund upon the order of this court, *without compulsion.* Forcible measures on the part of this court may be, and, undoubtedly, will be resisted under the protection of the state court, which is *bound* to exert every legal means in its power for that purpose; the more so that, in consequence of the smallness of the amount involved in this controversy, there can be no appeal from the final decision of this court in this suit.

(*c.*) All these embarrassments and evils may be avoided without danger to the fund, or impairment of any right the plaintiff may have thereto, by a strict adherence to the doctrine and policy proclaimed by the authorities above cited; leaving all the questions raised in this suit to be finally determined, in the action pending in the state court, by the supreme court of the United States.

(*d.*) It is difficult to perceive the force of the argument of the plaintiff's counsel, that the exercise by this court of its power to appoint a receiver in this case will "prevent multifarious litigation," or "protect" the fund in question from diminution. It would clearly have the contrary effect in both particulars, giving rise to unnecessary litigation; the cost of which would be chargeable on this fund.

III. But, independent of the aforegoing consideration, we submit,

*First,* That the statute forbidding the United States courts to issue an injunction, restraining proceedings in a state court, is applicable to this case (1 *U. S. Statute at Large,* 335; *Diggs* agt. *Wolcott,* 4 *Cranch U. S. R., p.* 119; *Peck* agt. *Jenness,* 7 *How. U. S. R., p.* 612; *Colby* agt. *Ledder, id.,* 626; *Taylor* agt. *Carryl, ubi supra; Johnson* agt. *Bishop, ubi supra; Atkinson* agt. *Purdy, ut supra; City Bank of New York* agt. *Skelton,* 2 *Blatchf.,* 26; *Ex parte Cabrera,* 1 *Wash. U. S. Cir. Ct. R., p.* 252). The fact that the injunction issues only to the parties before the court, and not to the court itself, is immaterial. It is no evasion of the difficulties that are the necessary result of an attempt to exercise this power over a party who is a litigant in another and independent forum (*Kennedy* agt. *The Earl of Cassilis, per lord* ELDON, 2 *Swan's Ch.; Peck* agt. *Jenness, ubi supra*). Receiverships are in effect injunctions, and something more stringent still (*Patten* agt. *Accessory Transit Co.,* 4 *Abbott Pr. R.* [*O. S.*]*, p.* 235).

*Second.* That in view of the recent unanimous decision of the court of appeals of this state, sustaining the jurisdiction of our state court in actions under the United States banking act of 1864, the question of the jurisdiction of the state court is, at least, sufficiently *doubtful* to prevent this court from granting the plaintiff's motion, either for a preliminary injunction or for the appointment of a receiver (*see case of Cooke* agt. *State National Bank of Boston, in N. Y. court of appeals; Woodward* agt. *Harris,* 2 *Barb. S. C. R., p.* 443; *Ramsey* agt. *Erie Railway Co.,* 7 *Abb. Pr. R.* [*N. S.*]*, p.* 187).

*Third.* That in no case will the court appoint a receiver unless it appears by affidavit not only that the property to be preserved is in *imminent danger,* but that the party in possession of it is *irresponsible* (*Kerr on Receivers, p.* 8, *and authorities cited in note* 2).

*Fourth.* That the Broadway Bank is more responsible than a receiver would be; and that the danger suggested by the plaintiff's counsel might have been avoided entirely by the plaintiff's sinking his dignity as an officer of the United States, and becoming a party to the action in the state court in which the warrant of attachment was issued.

IV. The preliminary injunction should be dissolved, and the motion for a receiver denied.

BROWN, HALL & VANDERPOEL, *attorneys, and*
J. STERLING SMITH, *counsel for defendants* M. T. BRENNAN, *sheriff, and* BROADWAY NATIONAL BANK.

The subject-matter of this motion is certain moneys now in the custody of the state court, under and by virtue of its writ of attachment, duly issued, in a suit which was pending in that court before the commencement of this action.

The motion is to transfer said moneys from said state court to the custody of this court, by appointing a receiver of the same in this action.

Two questions arise:

1st. As to the power of this court to make such transfer of said moneys.

2d. If the court has the power, is there any cause shown calling for the exercise of such power.

*First.* This motion is to be determined by the ordinary rules of law and practice in equity. The extraordinary powers conferred by the bankrupt act have no application in this proceeding, because this is not a cause of action or proceeding arising under said bankrupt act.

The statute forbidding the United States courts to issue an injunction restraining proceedings in a state court, is applicable and in force (1 *Stat. at Large,* 334).

Also, the well-established rule of law, that when the state court first obtains jurisdiction of a matter where the jurisdiction of the two courts is concurrent, the United States court cannot interfere (*Buck* agt. *Colbath* 3 *Wallace,* 334).

"Where either court is in the possession of the *res* sought to be reached, the process of the other must pause until that possession has terminated" (*Amy* agt. *Supervisors*, 11 *Wallace*, 138).

The provision of the banking act gives the state courts concurrent jurisdiction of proceedings against banks authorized thereby (*Bank act of* 1864, § 8).

If, therefore, the state court cannot be ousted of its jurisdiction by this court nor enjoined in its action, the subject-matter of the controversy which is in the custody of the state court cannot be taken from it by any order in this action.

*Second*. If the court has the power to appoint a receiver, there is no occasion for exercising such power.

The money is safe where it is.

The bank, which is the custodian of the fund, is more responsible than a receiver would be, and must respond to any judgment finally rendered against it herein.

*Third*. If the suit in the state court should result in a judgment in favor of the plaintiff therein, the sheriff would be responsible to the said plaintiff, and the Broadway Bank to the sheriff for the said moneys to satisfy said judgment.

To take said moneys from the said Broadway Bank without first relieving it from all liability under said attachment, would be exposing the bank to the contingency of again paying said moneys to the sheriff.

On the 2d of September, 1873, judge BLATCHFORD denied both motions—for an injunction and a receiver. No written opinion being given.